David R. King
dking@herrick.com
Leah Kelman
lkelman@herrick.com
HERRICK FEINSTEIN LLP
One Gateway Center
Newark, New Jersey 07102
(973) 274-2000

Richard S. Mandel (*pro hac vice* application to be filed)
Jonathan Z. King (*pro hac vice* application to be filed)
COWAN, LIEBOWITZ & LATMAN, P.C.
114 West 47th Street
New York, NY 10036
(212) 790-9200

*Attorneys for Plaintiffs*
*Promotion In Motion, Inc. and*
*Welch Foods Inc., A Cooperative*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

-----------------------------------------------------------x

PROMOTION IN MOTION, INC., and
WELCH FOODS INC., A COOPERATIVE

                Plaintiffs,

    v.

KERVAN USA LLC,

                Defendant.

18-CV-

## COMPLAINT

-----------------------------------------------------------x

Plaintiffs Promotion In Motion, Inc. ("PIM") and Welch Foods Inc., A Cooperative

("Welch"), by and through their undersigned attorneys, as and for their Complaint in this action

against Kervan USA LLC ("Kervan"), having an address at 1139 Lehigh Ave., Suite 300 C,

Whitehall, Pennsylvania 18052-5518, allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs bring this action for trademark infringement, trade dress infringement, false designation of origin, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 et seq., and corresponding state law, to halt Defendant's infringement of (a) the distinctive and highly recognizable packaging trade dress for the market-leading WELCH'S FRUIT SNACKS product; and (b) the distinctive three-dimensional trapezoid design PIM uses in connection with its popular and successful SOUR JACKS product.

## PARTIES

2.      PIM is a Delaware corporation with a principal place of business at 25 Commerce Drive, Allendale, New Jersey 07401.  PIM is in the business of developing, manufacturing, marketing, and distributing branded confectionery, snack and candy products.

3.      Welch is a Michigan cooperative corporation with a principal place of business at 300 Baker Avenue, Suite 101, Concord, MA 01732.  Welch is the cooperative marketing arm of the National Grape Co-Operative Association, a cooperative of grape farmers.  Welch manufactures and markets grape juices and other food and beverage products.

4.      Upon information and belief, Defendant Kervan is a Pennsylvania limited liability company with a principal place of business at 1139 Lehigh Ave., Suite 300 C, Whitehall, Pennsylvania 18052-5518.  Upon information and belief, Kervan is in the business of manufacturing and importing various candy products for sale in the United States.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C §§ 1331 and 1338, and pursuant to principles of supplemental jurisdiction.

6.      This Court has personal jurisdiction over Kervan because, upon information and belief, it is doing business in New Jersey and has committed tortious acts within New Jersey by selling the infringing products from which this dispute arises in this jurisdiction.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) and (c).

## FACTS

### The Successful and Famous WELCH'S FRUIT SNACKS Product and Trade Dress

8.      In developing its own proprietary candy brands, PIM expends great effort in creating appealing and distinctive recipes, formulas, product attributes, shapes, graphics, brand names and packaging to distinguish its products in the marketplace.

9.      One of PIM's most successful products is WELCH'S FRUIT SNACKS, which was introduced in 2001.  WELCH'S FRUIT SNACKS is the market leader in its category and is widely familiar to millions of consumers in the United States.

10.      PIM markets its WELCH'S FRUIT SNACKS pursuant to an exclusive license from Welch, which has granted PIM the exclusive right to use the WELCH'S trademark and variations on that mark in connection with fruit snacks.

11.      WELCH'S FRUIT SNACKS boasts a unique and appealing recipe, flavor profile, trade dress and packaging design, each of which distinguishes the product in the marketplace.

12.      Unlike many other branded fruit snack products, WELCH'S FRUIT SNACKS is made with real fruit and is based on a sophisticated recipe and preparation that provide a better quality taste and texture than competitive products.  This closely guarded recipe and flavor profile give PIM's product a competitive edge in the marketplace.

13.      WELCH'S FRUIT SNACKS also uses a distinctive and now famous trade dress and packaging design that has become well-known to consumers ("the WELCH'S FRUIT SNACKS Trade Dress").  The current iteration of the WELCH'S FRUIT SNACKS Trade Dress,

which carries forward the same overall look as the original packaging, has been in circulation for nearly a decade.  While the product is sold in various different box, bag and flavor configurations, the WELCH'S FRUIT SNACKS Trade Dress is consistent across these various packages and serves to identify and distinguish the product as the highest quality fruit snacks available.

14.     The WELCH'S FRUIT SNACKS Trade Dress is the amalgam of many different elements that feature a white central panel or box with the term "Fruit Snacks" in blue lettering centered over a curved arc, all surrounded by a contrasting colored background.  The white panel is also surrounded by a lined blue edging, and a stacked and photorealistic assortment of fruit items along the bottom of the package with a smaller number of free floating individual fruit items extending out along the right and left edges of the panel.  The top of the package uses the tagline "Fruit is our 1st Ingredient!," while the phrase "Family Farmer Owned" appears directly beneath the WELCH's brand name.

15.     The most popular and best performing version of the product is WELCH'S MIXED FRUIT FRUIT SNACKS, which boasts unequaled sales per point of distribution in the grocery retail channel and is the single best performing item in the entire fruit snacks category.  Consistent with the WELCH'S FRUIT SNACKS Trade Dress, WELCH'S MIXED FRUIT FRUIT SNACKS is sold in various sized boxes and bags featuring the familiar white central panel with the term "Fruit Snacks" in blue lettering centered over a curved arc, all against a dark blue background, and with the stacked and photorealistic fruit assortment at the bottom of the packaging with a smaller number of fruit items along the sides, accompanied by the use of the "Fruit is our 1st Ingredient!" and the "Family Farmer Owned" taglines.  A copy of the WELCH'S

FRUIT SNACKS Trade Dress for the WELCH'S MIXED FRUIT FRUIT SNACKS is depicted

below:



16.     Other versions of WELCH' FRUIT SNACKS feature the same basic trade dress

with modest adjustments in background color and the depicted fruit.  For example, the popular

WELCH'S BERRIES 'N CHERRIES FRUIT SNACKS and WELCH'S FRUIT PUNCH FRUIT

SNACKS feature a graphically similar design, with the same white central panel with a blue line

border, blue lettering over a curved arc, stacked and photorealistic fruit arrangement and taglines,

with only changes to the background color and particular fruit depicted.  Examples of bags of

these products appear below:

 

17.     The WELCH'S FRUIT SNACKS Trade Dress is inherently distinctive and non-functional.  As evidenced by the numerous third party products that use an entirely different graphic design, the WELCH'S FRUIT SNACKS Trade Dress represents a series of arbitrary, artistic design choices creating a unique overall selling image and brand presentation that serve to identify WELCH'S FRUIT SNACKS and distinguish the  products from others in the marketplace.

18.     WELCH'S FRUIT SNACKS has been a consistent and stunning commercial success since the product was first introduced.  PIM's sales of Welch's Fruit Snacks at the wholesale level exceeded $280 million in calendar year 2017, during which more than 1.6 billion packs were sold.  Since the brand's introduction, PIM has sold more than $2 billion of the product at wholesale.

19.     PIM aggressively promotes WELCH'S FRUIT SNACKS through various media. It attends numerous trade shows every year, and advertises the product in national magazines, newspaper free standing inserts, billboards, in-store signage, social media (Facebook, Instagram,

Twitter, YouTube), various websites, theme parks and more.   WELCH'S FRUIT SNACKS frequently appears in magazines, web blogs, and television news segments in connection with trends in snacking.  Since 2015, PIM has expended approximately $30 million dollars in promoting the brand.

20.     In virtually all advertisements and promotions, the WELCH'S FRUIT SNACKS Trade Dress is prominently depicted, because it serves as such a strong source identifier.

21.     WELCH'S FRUIT SNACKS is also heavily promoted by major retail chains of all types in their own widely circulated weekly flyers reaching tens of millions of consumers weekly.  Retailers for WELCH'S FRUIT SNACKS advertise the product in mailers, print ads, online and various other media, and also offer various promotional offers and discounts to stimulate sales of the product.  And again, such advertisements invariably depict the product itself, so that the familiar the WELCH'S FRUIT SNACKS Trade Dress is displayed time and again to consumers.

22.     WELCH'S FRUIT SNACKS is distributed, sold, marketed and promoted through virtually all available trade channels and reach millions upon millions of consumers on an ongoing basis.  These trade channels include, without limitation, grocery stores, drug stores, big box stores, club stores, specialty retailers, convenience stores, dollar stores, petroleum/gas retailers, vending, foodservice, hospitality, and the concessions and fundraising markets.

23.     WELCH'S FRUIT SNACKS is the undisputed leader in its class of product and is rated as the number one brand of real fruit snacks in household penetration, loyalty, and purchase rates.

24.     As a result of the enormous commercial success and years of promotion of WELCH'S FRUIT SNACKS, the WELCH'S FRUIT SNACKS Trade Dress has become

extremely well-known to consumers and the trade as identifying real fruit snacks of the highest quality.

25.     The WELCH'S FRUIT SNACKS Trade Dress is inherently distinctive and has also acquired secondary meaning among the relevant class of consumers and the trade.

26.     The WELCH'S FRUIT SNACKS Trade Dress has acquired significant goodwill and represents intellectual property of tremendous value.

**The Distinctive Design of PIM's SOUR JACKS Candies**

27.     Another of PIM's successful brands is its SOUR JACKS candies, soft-and-chewy sour candies that have proven extremely popular among children and teenagers.  SOUR JACKS was originally introduced in the early 1990s in the shape of a little boy, and this version is still sold as SOUR JACKS Original.

28.     Beginning in 2003, PIM introduced an extension of the SOUR JACKS brand using a different formulation, boasting a different taste, and featuring a distinctive and highly recognizable three-dimensional trapezoid shape, sometimes referred to as "The Wedge," shown below in four different flavor profiles, watermelon, green apple, lemonade and wildberry:



(the "SOUR JACKS Wedge Product").

29.     In introducing this new version of SOUR JACKS, PIM carefully designed and selected the unusual three-dimensional trapezoid shape pictured above to distinguish the product in the marketplace.  PIM has used this distinctive shape for its SOUR JACKS Wedge Product

since the product's introduction in 2003, starting with watermelon and then extending to green apple, lemonade and wildberry flavor variations in 2015.

30.     PIM's SOUR JACKS Wedge Product is characterized by five flat surfaces and edges angling vertically upward.  Among the five flat surfaces are a rectangular bottom, triangular right and left sides, and trapezoidal front and back planes.  The overall shape is of a trapezoid rendered in three dimensions.

31.     The shape of PIM's SOUR JACKS Wedge Product is not functional.  It does not replicate the actual shape of any particular fruit (such as the flavors in which the product is sold), serves no utilitarian function or other purpose affecting the cost or quality of the product, and provides no manufacturing or practical advantage in producing or packaging the product.

32.     PIM adopted and uses the trapezoidal configuration for the shape of SOUR JACKS Wedge Product itself ("PIM's Configuration Trade Dress"), as well as in images of the product displayed prominently on its packaging, in order to distinguish the brand in the marketplace and identify PIM as its source.  Examples of some retail packages of the SOUR JACKS Wedge Product appear below:

 




33.      PIM aggressively advertises and promotes PIM's Configuration Trade Dress when it markets its SOUR JACKS Wedge Product.  PIM has spent millions of dollars advertising the SOUR JACKS Wedge Product through various media, including online, point of sale materials such as in-store displays, trade advertising, free standing inserts and in-theater concession advertising.  PIM also promotes the product via a dedicated website (www.sourjacks.com), and on social media platforms, including Twitter, Facebook and Instagram.

34.      PIM's advertising for the SOUR JACKS Wedge Product expressly calls attention to the product's shape as an indication of source throughout its promotions, advertisements and communications to the public.  For example, PIM repeatedly uses the federally registered slogan "RESPECT THE WEDGE" on packaging, websites and in promotions.  PIM recently ran a "LIVIN' ON THE WEDGE" sweepstakes and also uses that slogan in advertising and promoting the product.  In addition, the www.sourjacks.com website urges consumers to "CHECK OUT THE ULTIMATE SHAPE OF SOUR!"  This repeated graphic and promotional emphasis on the

wedge shape ensures that the public understands that PIM's Configuration Trade Dress identifies PIM and PIM alone as the source of these popular products.

35.     PIM's SOUR JACKS Wedge Product is also sold in bulk form to distributors who then either repackage the products under private label store brands or sell them to a wide variety of outlets, such as candy and nut shops, candy kiosks, ice cream shops, fudge shops, grocery stores, movie theaters, theme parks and bulk candy stores as found at shopping malls and tourist and leisure attractions, all of which then offer the products for sale in bulk form.  Although PIM requires these various re-sellers to label the product as SOUR JACKS, the consumer's ability to identify the product by its shape takes on a heightened importance in these various contexts.

36.     PIM's SOUR JACKS Wedge Product has been a great commercial success, generating millions of dollars in sales annually.  PIM has sold approximately $25 million worth of the product at wholesale, yielding approximate retail sales of $40 million.  The product has become extremely popular with children and teenagers, and sales are growing every year.  The SOUR JACKS Wedge Product is available in multiple trade channels that expose the product to consumers nationwide, including large chain stores (such as Walmart and Target), drug store chains (CVS, Rite-Aid, Walgreen's), supermarkets (Kroger, Safeway, Shop-Rite), theater concessions, candy stores, and online merchants ranging from Amazon to specialty retailers.

37.     As a result of the commercial success and years of promotion of PIM's SOUR JACKS Wedge Product, PIM's Configuration Trade Dress has become well known to consumers and the trade and has developed significant goodwill for PIM as the source of the product.

38.     PIM's Configuration Trade Dress is distinctive and has acquired secondary meaning among the relevant class of consumers and the trade.

39.     PIM owns a valid and subsisting federal registration (Reg. No. 5,029,701) for the shape and coloration of the watermelon version of PIM's SOUR JACKS Wedge Product (the "PIM Registration").  The PIM Registration identifies the mark as one that "consists of the shape of a wedge for candy, with an upper green section with white speckles, followed by a narrow middle white section and followed by a lower red section with white speckles," as pictured below:



**Kervan's Infringing Conduct**

40.     PIM recently learned that Defendant Kervan has embarked on a concerted plan to knock off these popular brands by introducing products that imitate the distinctive trade dress features of both WELCH'S FRUIT SNACKS and the SOUR JACKS Wedge Product, thereby infringing both the WELCH'S FRUIT SNACKS Trade Dress and PIM's Configuration Trade Dress.  Kervan's unlawful acts are no accident, as the designs Kervan has adopted are carefully calculated to siphon off the goodwill PIM has spent years in cultivating.

**The Infringing SUNKIST FRUIT GUMMIES Product**

41.     Kervan recently announced that it had entered into a long term licensing partnership with Sunkist Growers, Inc. ("Sunkist") to introduce a line of gummy fruit candies. Although the SUNKIST FRUIT GUMMIES product has not yet been sold to consumers, Kervan has displayed the intended packaging for such products ("Kervan's Infringing Packaging Design") at trade shows and online to promote its new product launch.  Kervan's Infringing Packaging Design as publicly displayed closely copies the WELCH'S FRUIT SNACKS Trade

Dress, as shown below in the side-by-side comparison of three iterations of the parties'

respective products:










42.     As is apparent from the above comparisons, Kervan's Infringing Packaging

Design deliberately mimics the distinctive layout, graphics and imagery of the WELCH'S

FRUIT SNACKS Trade Dress.  Thus, with obvious reference to PIM's wildly popular

WELCH'S MIXED FRUIT FRUIT SNACKS, Kervan's Mixed Fruit version of the SUNKIST

FRUIT GUMMIES product features a central white panel with the term "Fruit Gummies"

centered and in a curving arc, surrounded by a dark blue background set off by blue lines.

Kervan's Infringing Packaging Design also uses a highly similar stacked and photorealistic

assortment of fruits at the bottom of the package and white panel, with a smaller number of

individual fruit pieces scattered along the sides of the panel, all arrayed and depicted in the same

overall look and format as appears on WELCH'S FRUIT SNACKS.  In addition, Kervan's

Infringing Packaging Design uses the identical "Fruit is our 1st Ingredient" slogan that appears on

WELCH'S FRUIT SNACKS products, and a similar reference to farms – "a cooperative of

family farms since 1893" – beneath the SUNKIST brand name.

14

43.     Likewise, the "Berries Blast" and "Sour Citrus" versions of Kervan's Infringing Packaging Design replicate the WELCH'S FRUIT SNACKS Trade Dress for WELCH'S BERRIES 'N CHERRIES FRUIT SNACKS and WELCH'S FRUIT PUNCH FRUIT SNACKS in virtually all the same ways, but substituting purple or orange for the background colors in yet a further effort to sow confusion and deception

44.     In short, Kervan's packaging for its planned new SUNKIST FRUIT GUMMIES product lifts the most distinctive elements of the WELCH'S FRUIT SNACKS Trade Dress, arranges those elements  in a nearly identical fashion, and combines them with replicas of the taglines associated with WELCH'S FRUIT SNACKS.  By combining all these elements, Kervan's product creates the same commercial impression as the WELCH'S FRUIT SNACKS Trade Dress in a fashion that is sure to engender confusion and deception among a significant portion of the consuming public.

45.     Upon information and belief, Kervan was aware of WELCH'S FRUIT SNACKS and the WELCH'S FRUIT SNACKS Trade Dress before adopting its confusingly similar trade dress for its new gummy fruit candy product.  Indeed, the similarities in packaging and close correspondence of different flavor variations are so striking that they cannot be the result of mere coincidence.  Significantly, Sunkist (presumably with suppliers other than Kervan) has previously sold other fruit snack products that did not use the familiar combination of features that is so readily recognizable as identifying WELCH'S FRUIT SNACKS.  It is only with the introduction of Kervan as Sunkist's licensee that the Sunkist product mimics so closely the WELCH'S FRUIT SNACKS Trade Dress.

46.     Upon information and belief, Kervan deliberately designed and chose the trade dress for the SUNKIST FRUIT GUMMIES in order to trade upon the goodwill of the WELCH'S FRUIT SNACKS Trade Dress.

47.     Upon information and belief, the SUNKIST FRUIT GUMMIES product will be targeted and promoted to the same classes of consumers to whom WELCH'S FRUIT SNACKS are marketed and sold.

48.     Because WELCH'S FRUIT SNACKS and SUNKIST FRUIT GUMMIES are relatively low-cost impulse purchases, the consumers purchasing them are apt to be less discerning in distinguishing products and are thus acutely vulnerable to confusion.

49.     Kervan's SUNKIST FRUIT GUMMIES and its associated trade dress are likely to cause confusion, mistake and deception among consumers as to the source and origin of such goods, and are likely to deceive the public into believing that Kervan's goods originate from, are associated with or are authorized or licensed by the producers of WELCH'S FRUIT SNACKS, or that Kervan's goods are from the same source, all to the damage and detriment of Plaitniffs' goodwill, reputation, and sales.

50.     Upon information and belief, by virtue of its unlawful conduct, Kervan will make substantial profits and gains to which it is not in law or equity entitled.

51.     As a result of Kervan's actions, Plaintiffs will be damaged in an amount to be determined at trial.

52.     PIM has demanded that Kervan immediately cease any plans to distribute products in Kervan's Infringing Packaging Design, but Kervan has resisted making any meaningful changes to the packaging.

53.      Kervan's unlawful activities will cause irreparable harm and injury to Plaintiffs, the reputation and the goodwill associated with the WELCH'S FRUIT SNACKS Trade Dress, and Plaintiffs have no adequate remedy at law.

**Kervan's Infringing Sour Watermelon Candy Product**

54.      PIM also recently learned that Kervan has targeted another of PIM's successful products, the SOUR JACKS Wedge Product, by marketing a knock-off sour watermelon candy product in a confusingly similar shape to PIM's Configuration Trade Dress and bearing the same three color combination protected by the PIM Registration.

55.      Upon information and belief, Kervan imports this product, which it has sold to various distributors, rebaggers, wholesalers, and/or retailers.  Upon information and belief, this imported knock-off is less costly to import and distribute in the United States, so that retailers can profit from replacing genuine PIM product with a cheaper imitation.

56.      One version of Kervan's infringing watermelon product, which has been offered for sale at CVS stores, is depicted below:



Upon information and belief, Kervan has sold the same product in bulk to many other distributors and wholesalers, so that Kervan's infringing product is proliferating in the

marketplace and doing enormous damage to the distinctiveness of PIM's Configuration Trade Dress.

57.     Kervan's use of a product shape and color combination that is essentially identical to that used for the genuine SOUR JACKS creates a strong likelihood that consumers will think Kervan's product emanates from the same source as the genuine SOUR JACKS products manufactured by PIM.

58.     Upon information and belief, Kervan was aware of PIM's Configuration Trade Dress before it adopted its confusingly similar sour watermelon product.

59.     Kervan's infringing sour watermelon product is being marketed and sold to the same class of candy consumers to whom PIM's SOUR JACKS Wedge Product is promoted and sold, and is being sold in the same channels of trade and through the same retail outlets as PIM's SOUR JACKS Wedge Product.

60.     The young consumers for PIM's SOUR JACKS Wedge Product and Kervan's infringing product, both of which are low-cost impulse purchases, are particularly vulnerable to confusion between the sources of the two products.

61.     Kervan's sour watermelon product is likely to cause confusion, mistake and deception among consumers as to the source and origin of such goods, and is likely to deceive the public into believing that Kervan's goods originate from, are associated with or are authorized or licensed by PIM or the producer of SOUR JACKS, or that Kervan's goods are from the same source as PIM's, all to the damage and detriment of PIM's goodwill and sales.

62.     Upon information and belief, by virtue of its unlawful conduct, Kervan has made or will make substantial profits and gains to which it is not in law or equity entitled.

63.     As a result of Kervan's actions, PIM has been damaged in an amount to be determined at trial.

64.     Kervan's unlawful activities result in irreparable harm and injury to PIM, and PIM has no adequate remedy at law.

65.     PIM has demanded that Kervan immediately cease any further distribution of the infringing product, but upon information and belief, Kervan continues to sell the product and also plans to continue selling another version of a sour watermelon candy that uses the same three color combination protected by the PIM Registration.

**FIRST CLAIM FOR RELIEF**
**(Claim by Both Plaintiffs for Violation of Section 43(a)**
**of the Lanham Act – WELCH'S FRUIT SNACKS Trade Dress)**

66.     Plaintiffs repeat and reincorporate the allegations contained in Paragraphs 1-26 and 40-53 above as if fully set forth herein.

67.     Kervan's promotion and intended sale of the SUNKIST FRUIT GUMMIES as described above, violate the WELCH'S FRUIT SNACKS Trade Dress, and constitute trade dress infringement, false designations of origin, and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

**SECOND CLAIM FOR RELIEF**
**(Claim by PIM for Violation of Section 32(1) of the Lanham Act – PIM Registration)**

68.     PIM repeats and reincorporates the allegations contained in Paragraphs 1 through 67 above as if fully set forth herein.

69.     Kervan's sale of its infringing sour watermelon candy as described above infringes the PIM Registration and thus constitutes infringement of a registered trademark in violation of section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

### THIRD CLAIM FOR RELIEF
### (Claim by PIM for Violation of Section 43(a)
### of the Lanham Act – PIM's Configuration Trade Dress)

70.     PIM repeats and reincorporates the allegations contained in Paragraphs 1 through 69 above with the same force and effect as if set forth herein.

71.     Kervan's sale of its infringing sour watermelon candy as described above infringes PIM's Configuration Trade Dress and thus constitutes trade dress infringement, false designations of origin, and unfair competition in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

### FOURTH CLAIM FOR RELIEF
### (Claim by Both Plaintiffs for Common Law
### Unfair Competition – WELCH'S FRUIT SNACKS Trade Dress)

72.     Plaintiffs repeat and reincorporate the allegations contained in Paragraphs 1-26 and 40-53 above with the same force and effect as if set forth herein.

73.     Kervan's promotion and intended sale of the SUNKIST FRUIT GUMMIES as described above violate the WELCH'S FRUIT SNACKS Trade Dress, and constitute unfair competition in violation of the common law of the State of New Jersey.

### FIFTH CLAIM FOR RELIEF
### (Claim by PIM for Common Law Unfair Competition – PIM's Configuration Trade Dress)

74.     PIM repeats and reincorporates the allegations contained in Paragraphs 1 through 73 above with the same force and effect as if set forth herein

75.     Kervan's sale of its infringing sour watermelon candy as described above infringes PIM's Configuration Trade Dress and constitutes unfair competition in violation of the common law of the State of New Jersey.

WHEREFORE, Plaintiffs demands judgment against Kervan as follows:

76.     Kervan, its officers, agents, servants, employees, representatives, parents, subsidiaries, affiliates, divisions, successors and assigns and all those persons or entities in active concert or participation with any of them who receive actual notice of the injunctive order, be preliminarily and permanently enjoined from:

A.     Using in any manner the WELCH'S FRUIT SNACKS Trade Dress, PIM's Configuration Trade Dress or any other trade dress, packaging design or product configuration that is confusingly or deceptively similar thereto, in connection with the sale or promotion of Kervan's goods, including, without limitation, Kervan's sour watermelon candy and its SUNKIST FRUIT GUMMIES;

B.     Infringing the design protected by the PIM Registration, including, without limitation, by selling sour watermelon candies in a confusingly similar shape and/or color combination to that protected by the PIM Registration; and

C.     Committing any other act calculated or likely to cause the public to believe that Kervan or its goods are in any way connected, affiliated or associated with PIM or its goods, or from otherwise competing unfairly with PIM.

77.     Pursuant to 15 U.S.C. § 1118, that Kervan deliver up for destruction all material (including, without limitation, all packaging, catalogs, advertisements, promotional materials, brochures, signs, displays and/or stationary), within its possession, custody or control, either directly or indirectly, that bears a package design, shape or configuration or color combination confusingly similar to the WELCH'S FRUIT SNACKS Trade Dress, PIM's Configuration Trade Dress and/or the PIM Registration.

78.     Pursuant to 15 U.S.C. § 1116(a), that Kervan be directed to file with the Court and serve upon PIM, within thirty (30) days after entry of final judgment, a report in writing and

under oath setting forth in detail the manner and form by which it has complied with the provisions set forth in paragraphs 1 and 2 above;

79.     Pursuant to 15 U.S.C. § 1117(a), that Kervan be directed to account to Plaintiffs for all gains, profits and advantages derived from its wrongful acts and to pay Plaintiffs all damages sustained as a result of Kervan's unlawful conduct;

80.     Pursuant to 15 U.S.C. § 1117(a), that Plaintiffs recover from Kervan the greater of three times the amount of Kervan's profits or any damages sustained by Plaintiffs, together with interest on such amount and the costs of this action;

81.     Pursuant to 15 U.S.C. § 1117(a), that Plaintiffs recover from Kervan attorneys' fees and costs in this action; and

82.     That Plaintiffs have such other and further relief as the Court deems just, equitable and proper.

Dated: Newark, New Jersey
      July 16, 2018

Respectfully submitted,

HERRICK FEINSTEIN LLP

By: */s/ David R. King*
     David R. King
     Leah Kelman
One Gateway Center
Newark, New Jersey 07102
(973) 274-2000

COWAN, LIEBOWITZ & LATMAN, P.C.
Richard S. Mandel (*pro hac vice* application to be filed)
Jonathan Z. King (*pro hac vice* application to be filed)
114 West 47th Street
New York, NY 10036
(212) 790-9200